Christiane C. Kinney (SBN 199056)
christiane@ckinneylaw.com
KINNEY LAW, P.C.
8023 Beverly Blvd., Suite 1568
Los Angeles, CA 90048
Telephone: 310-751-0354

Jonathan F. Raburn (admitted *pro hac vice*)
jonathan@geauxlaw.com
McCarty and Raburn, A Consumer Law Firm PLLC
1907 Wigeon Street
Granbury, TX 76049
Telephone: 225-412-2777

Attorneys for Plaintiffs
DAVID CANTONG AND JASON BARROW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE SOLIS, et al., | Case No. 8:22-cv-00102-CJC-KES |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendant. | Complaint filed: July 18, 2019 |

Plaintiffs, based on personal knowledge as to themselves, and upon information and belief as to all other matters, allege as follows:

1. Plaintiffs David Cantong and Jason Barrow (collectively "Plaintiffs") bring this class action against Defendant Experian Information Solutions, Inc. (hereinafter "Experian" or "Defendant").

2. This is an action for statutory and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq.*

3. Consumer reporting agencies ("CRAs") are companies that collect, compile, and provide information about consumers in the form of consumer reports for certain permissible statutory purposes under the FCRA. The three largest CRAs are Experian, Equifax, and TransUnion, who maintain credit files on approximately 200 million U.S. consumers and receive information from approximately 10,000 furnishers, such as creditors, lenders, and debt collection agencies.

4. Credit reports play an increasingly important role in the lives of consumers. Most creditors, for example, review these reports to make decisions about whether to extend credit to consumers and what terms and conditions to offer them. As such, information contained in these reports affects whether a person is able to get a private education loan, pay for college costs, secure a mortgage loan to buy a home, or obtain a credit card. Credit reports are also increasingly used for many noncredit decisions, including by landlords to determine whether to rent an apartment or home to a prospective tenant and by employers to decide whether to hire potential job applicants or to offer a promotion to existing employees.

5. As such, CRAs have a statutory obligation to verify independently the accuracy and completeness of information included in the credit reports they provide.

6. This is a class action brought on behalf of those consumers whose Experian credit reports contain false, misleading, and inaccurate information regarding Verizon and Verizon Wireless Accounts. Defendant Experian willfully and recklessly allowed the unlawful practice of "re-aging" account information, *i.e.,* altering certain delinquency-related status dates and removing account history, on Experian consumer credit reports causing third parties who review such credit reports to believe that a consumer's delinquency is more recent than it really is. This has led to class members suffering a harm with a close relationship to the harm associated with the tort of defamation.

7. Experian willfully fails to follow reasonable procedures to assure the maximum possible accuracy of the information concerning Plaintiffs and members

of the class and fails to conduct any reasonable investigation into the accuracy of information reported by Verizon about Plaintiffs and members of the class, as required by the FCRA.

8. Experian willfully fails to conduct appropriate reinvestigation of the accuracy of information following a dispute initiated by a consumer, as required by the FCRA.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court is conferred by the Fair Credit Reporting Act, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10. Jurisdiction is also conferred pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens of states different from Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11. Venue in this District is appropriate under 28 U.S.C. § 1391(b) because Plaintiff Cantong resides in Los Angeles County, California, and Defendant Experian Information Solutions resides and maintains its North American Headquarters in Costa Mesa, Orange County, California, as defined under 28 U.S.C. § 1391.

## PARTIES

12. Plaintiff David Cantong is a natural person, citizen of the United States of America, and resident of Los Angeles County, California. Plaintiff Cantong is a "consumer" as the term is defined in 15 U.S.C. §1681a(c).

13. Plaintiff Jason Barrow is a natural person, citizen of the United States of America, and resident of Philadelphia County, Pennsylvania. Plaintiff Barrow is a "consumer" as the term is defined in 15 U.S.C. §1681a(c).

14. Defendant Experian is an Ohio corporation with its principal place of business in Costa Mesa, Orange County, California. Experian is registered to do business in the State of California. Experian is a "consumer reporting agency," as defined by 15 U.S.C §1681a(f), and is engaged in the business of assembling,

evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

## FACTUAL ALLEGATIONS

15. Experian is multinational consumer credit reporting agency. According to its website, Experian "maintains credit information on approximately 220+ million U.S. consumers."[1]

16. Verizon Wireless is a provider of cellular communication, as well as home internet, services.

17. On information and belief, Verizon Wireless reported many of its consumer accounts that were in First Party collections status to Experian, during the years of 2015, 2016, 2017, 2018 and 2019. Once these first-party Verizon Wireless collection accounts were reported to Experian, Experian would then display them on consumer credit reports that were viewable by third-party lenders and other extenders of credit.

18. On information and belief, Experian also allowed for third third-party lenders and other extenders of credit to view these Verizon Wireless collection accounts during the years of 2015, 2016, 2017, 2018 and 2019 through a combination of soft inquiries, hard inquiries, promotional inquiries, as well as, products sold by Experian called "smart attributes" and "premier attributes.". These products are packages of data that Experian sells to third parties that are interested in a consumer's credit worthiness.

19. On information and belief, during the years of 2015 through 2019 Verizon Wireless reported thousands, if not hundreds of thousands, of the above mentioned first party collection accounts to Experian. First party collection accounts are accounts listed in a collection status that are being reported to Experian by the original creditor for display on consumer credit reports. With Verizon Wireless'

---

[1] Experian's Consumer Information Sheet, https://www.experian.com/consumer-information/index?intcmp=CIS_busgrplnk_abtexp_020912 (last accessed April 18, 2022).

large share of the consumer cellular market, it is possible that Verizon Wireless could have reported over one million of these first party collections to Experian during the years of 2015 through 2019.

20. During the years of 2015 through 2019, thousands, if not hundreds of thousands, of the above mentioned first party collection accounts reported to Experian by Verizon Wireless were disputed by consumers by and through the defendant Experian as required by the Fair Credit Reporting Act.

21. On information and belief, during the years of 2015 through 2019, whenever Experian received a dispute from a consumer of a Verizon Wireless account, they would send an ACDV to Verizon Wireless as their entire investigation into the disputed account. In response to the ACDV, Verizon Wireless would input a "B" Code in its ACDV response, which essentially functions as a reset button on the account and deletes the previous account history. The use of the "B" Code has the effect of making the account appear as a newly opened first party collection as opposed to the account showing a correct account history.

22. Following the initiation of a dispute by a consumer, Verizon Wireless, by inputting the "B" Code in its ACDV responses, altered the "Date of Status" and/or "First Reported" dates of the consumer's debt and furnished false information to Experian who, in turn, includes such false information on the consumer's credit report that third parties could then view. Additionally, Experian would provide the false information through products it sold to potential lenders that were interested and concerned with these consumers credit worthiness.

23. The "Date of Status" date on a credit report should reflect the date when the account first went uncollectible or a major event in the history of the account. The date should never change without a major event in the history of the account or a dispute.

24. The "First Reported" date is the date the account is first reported to Experian and that date should never change.[2]

25. Verizon Wireless and Experian improperly re-age or re-date the delinquency dates on consumers' accounts, and Experian does nothing to verify the accuracy of such information. Indeed, Experian does not follow any reasonable procedure to assure the maximum possible accuracy and has been reporting false and inaccurate information, even after it knew or should have known the information it was reporting was incorrect. Experian has enough date in their own system to know that Verizon Wireless is reporting false and misleading data to them. Yet, Experian has failed to put reasonable procedures in place to cross check its own records with the information provided to it by Verizon wireless.

26. Consumers are harmed by Verizon Wireless's and Experian's reporting of false, misleading, and inaccurate information on consumers' credit reports. The fact Experian allowed Verizon to make their accounts look more recent than they actually are matters. By re-aging the events, Verizon Wireless and Experian make it appear as if such adverse events occurred more recently than they actually did.

27. Both Verizon Wireless and Experian willfully, recklessly and intentionally fail to properly conduct a good faith investigation into consumer disputes, as required by the FCRA.

28. By re-aging consumers' accounts when they initiate a dispute, Verizon Wireless and Experian are actually penalizing consumers for exercising their statutory right to dispute inaccurate information on their credit reports. Verizon Wireless and Experian are re-aging Verizon Wireless accounts with every almost every dispute and, accordingly, placing false, misleading, and inaccurate information on Plaintiff's and every class members Experian consumer credit report.

---

[2] Experian uses the terms "Reported Since" and "First Reported" interchangeably on its reports, depending on whether they are obtained online or through the mail. Accordingly, "Reported Since" and "First Reported" will be used interchangeably throughout this Complaint to refer to the same data field in Plaintiffs' Experian credit report.

29. Verizon Wireless is falsely and misleadingly reporting the character and/or legal status of these alleged debts by re-aging the accounts and is providing credit information that it knows, or should know, is inaccurate and misleading.

30. Experian permits Verizon Wireless to provide information that is inaccurate and misleading by intentionally structuring its reporting system to allow for unverified reporting by Verizon Wireless. Experian should have discovered the misleading information through a good faith, reasonable investigation.

**EXPERIAN'S DISPUTE PROCESS**

31. When a consumer initiates a dispute, Experian generates an Automated Consumer Dispute Verification form ("ACDV"). The ACDV contains data and information on a consumer that is "on profile" with Experian.

32. Experian transmits the ACDV to the data furnisher (in this case, Verizon Wireless) for review and verification. The data furnisher can then edit the information, delete the account, or continue to report without changes.

33. Because of Experian's business relationship with the data furnisher, Experian does not investigate the information the data furnisher provides it.

34. Experian takes the position that it is not responsible to tell the data furnisher what to report and does not vet the data provided.

35. Therefore, Experian does nothing to ensure the accuracy of the information returned by the data furnisher.

36. Instead, Experian simply reports, without question, the data provided by the data furnisher.

37. Experian does not conduct a reinvestigation as required by the FCRA.

**PLAINTIFFS' FALSE CREDIT REPORTS/DISCLOSURES/PROFILE**

**Plaintiff David Cantong**

38. Plaintiff David Cantong obtained his Experian credit report on August 1, 2017. The August 1, 2017, report contained information for a Verizon Wireless account.

39. On the August 1, 2017, report, Verizon Wireless Account No. ****7950 had a Date of Status of 06/2017 and a First Reported date of 06/2017. Both of these dates were inaccurate and falsely reflected a "newer" delinquency on Plaintiff Santos' credit report/disclosure/profile.

40. On August 1, 2017, Plaintiff Cantong disputed the inaccurate "Date of Status" and "First Reported" dates reported by Verizon Wireless on his Experian credit report.

41. Plaintiff Cantong again obtained his Experian credit report on August 24, 2017. The August 24, 2017, report again contained information for the Verizon Wireless account, however, remarkably the delinquency dates on the August 24, 2017, report were again altered, again inaccurate, and again made to look as if the delinquency on Cantong's Verizon Wireless account was "newer."

42. On the August 24, 2017, report, the Verizon Wireless account now had a Date of Status of July 2017 and a First Reported date of July 2017 and had no account history before July 2017.

43. Verizon Wireless had inputted the the "B" Code, in response to Plaintiff Cantong's dispute, and Experian allowed this incorrectly used code to reset data on Plaintiff Cantong's Experian Report. Experian had again allowed an improperly used "B" code to unlawfully re-aged the information for the Verizon Wireless account on Plaintiff Cantong's August 24, 2017, credit report/disclosure/profile.

### Plaintiff Jason Barrow

44. Plaintiff Jason Barrow obtained his Experian credit report on October 24, 2017. The October 24, 2017, report contained information for a Verizon Wireless account.

45. On the October 24, 2017, report, Verizon Wireless Account No. 8242**** had a Date of Status of 05/2017 and a First Reported Date of 05/2017. Both of these dates were inaccurate and falsely reflected a "newer" delinquency on Plaintiff Barrow's credit report/disclosure/profile.

46. On October 24, 2017, Plaintiff Barrow disputed the inaccurate "Date of Status" and "First Reported" dates reported by Verizon Wireless on his October 24, 2017, Experian credit report.

47. Plaintiff Barrow again obtained his Experian credit report on December 15, 2017. The December 15, 2017, report contained information for the Verizon Wireless account, however, remarkably, the delinquency date on the December 15, 2017, report was again altered, again inaccurate, and again made to look as if the delinquency on Barrow's Verizon Wireless account was "newer."

48. On the December 15, 2017, report, Verizon Wireless Account No. 8242**** now had a Date of Status of 10/2017 and a First Reported Date of 10/2017 and had no account history before October 2017.

49. Verizon Wireless had inputted the "B" Code, in response to Plaintiff Barrow's dispute, and Experian allowed this incorrectly used code to reset data on Plaintiff Barrow's Experian Report. Experian had again allowed an improperly used "B" code to unlawfully re-aged the information for the Verizon Wireless account on Plaintiff Barrow's December 15, 2017 credit report/disclosure/profile.

## CLASS ALLEGATIONS

50. Plaintiffs bring this action and seek to certify and maintain it as a class action under Fed. R. Civ. P. Rule 23(a), (b)(2), and/or (b)(3) on behalf of themselves and nationwide class and subclass defined as:

Nationwide Class Against Defendant Experian:
All persons whose Verizon Wireless account was re-aged on their Experian consumer credit report / disclosure / profile.

Nationwide Sub-Class Against Defendants Experian:

All persons who initiated a dispute with Experian and whose Verizon Wireless account information was re-aged on their Experian consumer credit report / disclosure / profile.

51. The class and sub-class are so numerous that joinder of all members is impracticable. Upon information and belief, there are thousands of class and sub-class members.

52. There are questions of law and fact, common to the class, which predominate over any questions affecting only individual class members. The principal question is whether Defendant's conduct in connection with re-aging consumers' account information violates the FCRA.

53. Upon information and belief, the identity of class and sub-class members can be determined from Defendant's records.

54. Plaintiffs' claims are typical of the claims of the class and sub-class and arise from the same course of conduct by Defendants. The relief Plaintiffs seek is typical of the relief sought for absent class and sub-class members.

55. Plaintiffs will fairly and adequately represent and protect the interests of the class and sub-class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions.

56. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and sub-class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of class and sub-class.

57. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3), because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and of fact regarding Defendant's conduct and responsibility predominate over any questions affecting only individual class members.

58. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies,

economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

59. Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

## CLAIM FOR RELIEF

## Violation of the Fair Credit Reporting Act

## Against Experian

60. Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

61. The FCRA imposes a duty on Experian to prepare consumer credit reports with "maximum possible accuracy":

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C.A. § 1681e.

62. Experian does not vet or verify any of the information provided to it by Verizon Wireless.

63. Experian does not conduct any investigation during its dispute resolution process. Experian instead relies entirely on Verizon Wireless as a data furnisher. Experian's dispute resolution process fails to follow reasonable procedures to assure maximum possible accuracy of information regarding Plaintiffs and class members.

64. Experian is aware that Verizon Wireless was supplying false, misleading, and inaccurate information regarding Plaintiffs and class members.

65. By knowingly allowing Verizon Wireless to re-age Plaintiffs' and class members' account information, Experian is failing to ensure "maximum possible accuracy."

66. The FCRA imposes a duty on Experian to conduct an investigation when a consumer disputes the accuracy of any information on the consumer's credit report:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C.A. § 1681i(a)(1)(A).

And:

15 U.S.C. §1681i(a)(5) reads:

> (5) Treatment of Inaccurate or Unverifiable Information
>
> (A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-
>
>     (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>
>     (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

- 12 -

AMENDED CLASS ACTION COMPLAINT
Case No. 8:22-cv-00102-CJC-KES

67. Experian's dispute process fails to conduct a reinvestigation of the accuracy of the disputed information.

68. Defendant's violation of the FCRA was willful and intentional and/or negligent. Under, 15 U.S.C. §1681n and 15 U.S.C. §1681o, Plaintiffs are entitled to recover statutory damages, punitive damages, and reasonable attorney's fees. Indeed, 15 U.S.C. §1681n, "Civil Liability for Willful Noncompliance" provides that:

> (a) Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of
>
> (1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000;
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

*Id.*

69. Experian willfully violated its duties under the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiffs and class members.

70. Experian willfully violated its duties under the FCRA by failing to conduct a good faith reinvestigation following Plaintiffs' and class members' notices of dispute.

71. Experian willfully violated its duties under the FCRA by allowing Verizon Wireless to report false and inaccurate information concerning Plaintiffs and class members.

72. Plaintiffs and class members have suffered a harm with a close relationship to the harm associated with the tort of defamation. This happened when

Experian provided inaccurate and manipulated financial and credit data to financial institutions that were interested in Plaintiffs' and class members' credit worthiness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs seek judgment in their favor and damages against Defendant Experian based on the following requested relief:

a. Statutory damages pursuant to 15 U.S.C. § 1681;

b. Punitive damages pursuant to 15 U.S.C. § 1681;

c. Costs and attorneys' fees, pursuant to 15 U.S.C. § 1681; and

d. Such other and further relief as may be deemed necessary, just, and proper.

Dated: June 13, 2022                 Respectfully submitted,

By */s/ Jonathan F. Raburn*
Jonathan F. Raburn (*pro hac vice*)
MCCARTY AND RABURN, A
CONSUMER LAW FIRM, PLLC
1907 Wigeon Street
Grandbury, TX 76049
Telephone:   225.412.2777
Facsimile:   225.612.6571
Email: jonathan@geauxlaw.com

Attorney for Plaintiffs
DAVID CANTONG AND JASON BARROW

# **CERTIFICATE OF SERVICE**

I, Christiane C. Kinney, hereby declare under penalty of perjury as follows:

I am a partner at the law firm of Kinney Law, P.C., 8023 Beverly Boulevard, Suite 1568, Los Angeles, California 90048. On June 13, 2022, I caused the foregoing **AMENDED CLASS ACTION COMPLAINT** to be electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 13, 2022.

/s/ Christiane C. Kinney